**FILED**

May 29 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ aishahs _____ DEPUTY

Anton Ewing (*pro se*)
3077 Clairemont Drive #372
San Diego, CA 92117
anton@antonewing.com.
(619)719-9640

Plaintiff

# THE UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton Ewing, an individual, | Civil Case No.:  **'19CV1005 BAS LL** |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Senior Life Planning, LLC, a Florida limited liability company | **TCPA 47 USC §227(b)(1)(A)** |
| | **TCPA 47 USC §227(c)(5)** |
| Defendant. | |

Plaintiff Anton Ewing ("Plaintiff"), complains against Defendant Senior Life

Planning, LLC, a Florida limited liability company ("SENIOR LIFE

PLANNING") and alleges as follows:

## I.    INTRODUCTION

1.    Catherine Gillespie ("Gillespie") is an employee of Senior Life Planning,

LLC.

2.     Senior Life Planning, LLC owns a fictitious business name in Florida called Quick Capital Partners with a registration number of G19000052790 that was issued on April 30, 2019 in Flagler county.

3.     Senior Life Planning, LLC was formed in Florida on December 14, 2018 with its headquarters at 14 Renshaw Place, Palm Coast, Florida 32164 and it is owned and operated by Michael Comino.

4.     On May 20, 2019, Gillespie admitted on the telephone that she used an automatic telephone dialing system on her computer to dial Plaintiff's cell phone, 619-719-9640, from her phone number 888-881-4102.  However, before that call, there was a distinct bubble popping sound at the very beginning of the first call from what sounded like a call center in India.  The initial lady on the phone said her name was Lisa with a heavy East Indian accent.  Lisa then transferred the call to her funding manager, Gillespie.  Lisa admitted that she was recording the call at the end and not at the beginning.  Gillespie called back, apparently because of a bad connection.   Plaintiff did not give or imply permission to call back.

5.     Gillespie sent an email to Plaintiff from catherine@quickcapitalpartners.com.  Gillespie stated her direct phone was 386-400-5060.

6.     Local Rule 83.4 regarding civility and its prohibition against attorneys

making derogatory statements about Plaintiff that disparages the intelligence,

ethics, morals, integrity or behavior of Plaintiff Ewing, applies to Defendant's

attorney.

7.     Local Rule 83.4 can be found at:

https://www.casd.uscourts.gov/_assets/pdf/rules/Local%20Rules.pdf

8.     Defendant's attorney has read Local Rule 83.4 and agrees to not harass,

intimidate, or disparage Ewing.

9.     Defendant's attorney is subject to and bound by California Business &

Professions Code section 6128 regarding criminal deceit by an attorney.

10.    Defendant's attorney agrees to not commit criminal deceit in his dealings

with Plaintiff.

11.    If Defendant's attorney makes any derogatory remarks in his pleadings

toward Plaintiff, then Plaintiff will file a State Bar complaint, move for Rule 11

sanctions and will ask the Court to refer said attorney to the Federal Bar standing

committee on discipline.  See General Order 708 adopted 4/12/2019

12.    SENIOR LIFE PLANNING began harassing Plaintiff on or about May 20,

2019.  Plaintiff was stern with Defendant back on May 20, 2019 and was very clear

about never telemarketing him ever again.   Then Defendant called again.  Since

Defendant did not cease and desist, this lawsuit resulted.

13.    After the May 20, 2019 call, Plaintiff received an email from Gillespie using

catherine@quickcapitalpartners.com.

14.     The May 20, 2019 calls were not the first calls.  Plaintiff knows this because of what the employee on the other end of the phone was stating.  Defendant's statements showed that Defendant must have called prior or must have paid and hired and controlled some other contracted agent of theirs to call Plaintiff previously.  When Gillespie called, she stated Plaintiff's name (or rather the name that Plaintiff gives to telemarketers when they call).

15.     Often telemarketers higher controlled third parties to do their initial illegal calling in violation of the TCPA.  The initial lead source always plays coy and will not divulge who they are or who they are working for.  That in and of itself is a violation of the FCC's Telemarketing Sales Rule and actionable under 47 USC §227(c)(5).  The only way that Plaintiff can find out who the TCPA violator is, is to fain interest and "play along" on the call as the telemarketer reads the script and illegally records the responses so they can sell the lead to Defendant SENIOR LIFE PLANNING.

16.     The volume of illegal telemarketing calls in this country is skyrocketing. Something must be done.  Plaintiff is doing something about it.

17.     The Honorable District Judge Chad F. Kenney stated on May 1, 2019 in case number 18-cv-02071, *Shelton vs. Fast Advance Funding, LLC*: "Well, the only way this, this act is going to get any teeth in it at all is through a serial litigant."

18.    Judge Kenney was referring to the TCPA when he made this above statement on the record.  See attached.

19.    Defendant directly called Plaintiff on his DNC registered cell phone in violation of the TCPA.

20.    The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant Senior Life Planning, LLC

21.    Senior Life Planning, LLC has been illegally calling Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS.  Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Senior Life Planning, LLC, to change their ways.  To be clear, Plaintiff is suing SENIOR LIFE PLANNING for the directly dialed calls. There were other calls through lead generators but this lawsuit is for the direct autodialed calls as well.

22.    The Defendant will hand over the lead source in discovery.

23.    Defendant Senior Life Planning, LLC paid Gillespie $300 for making the above stated illegal calls to Plaintiff.

## II. PARTIES

24.    Plaintiff Anton Ewing is a citizen of California who resides in California, in

this District.

25.     Defendant Senior Life Planning, LLC, is a Florida limited liability company with its corporate office Palm Coast, Florida, and is not lawfully registered to do business in California.  SENIOR LIFE PLANNING is managed by Michael Comino.

26.     Michael Comino is the member and owner of SENIOR LIFE PLANNING and its CEO.

27.     Gillespie called Plaintiff through an auto dialing system without permission.

28.     Gillespie did not have permission or consent to call or text Plaintiff.

## III. JURISDICTION AND VENUE

29.     This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

30.     This Court has personal jurisdiction over SENIOR LIFE PLANNING, LLC because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, SENIOR LIFE PLANNING, LLC made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Senior Life Planning, LLC has also subjected themselves to personal jurisdiction in California because they are running and abetting said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Senior Life Planning,

LLC through their dba's and agents, initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to Senior Life Planning, LLC marketers and others within the organization in a knowingly illegal manner.

31.    Plaintiff was called on cell phone of 619-719-9640 by Senior Life Planning, LLC.   Plaintiff was called multiple times beginning on or about May 20, 2019, from 888-881-4102, a number owned, used and controlled by Senior Life Planning, LLC and its agents, with a prerecorded message which then transferred to a live human.   The initial part of the call was a pre-recorded message.   After many personal questions were asked and answered, the call was transferred to another Senior Life Planning, LLC person who repeated the same questions. Defendant's employee asked if Plaintiff was interested in merchant cash advances or business loans.

32.    Plaintiff has expressly stated exactly what phone number Defendant used to call Plaintiff, as well as an exact date of one of the calls, to which number the calls were made, what was said on the call and that the call was made with an ATDS and prerecorded message.   All of this meets the particularity requirements for a cause of action.

33.    Plaintiff's phone number is not a business phone.

34.    Plaintiff's phone is registered on www.donotcall.gov and was done so more than 31 days prior to the first call.

## IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

35.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

36.    The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

37.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

38.    Plaintiff Ewing alleges that Defendant Senior Life Planning, LLC placed repeated automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) from their phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time from December 2018 to May 29, 2019 and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim.  There was a long delay when the calls connected every time and Plaintiff heard a bubble popping sound right before the prerecorded message started.

# V. STANDING

39.     The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded

that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same

and *pro se* pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627

F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42

(7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010);

*Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following

*Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint

liberally").

40.     Standing is proper under Article III of the Constitution of the United States

of America because Plaintiff's claims state:

   A. A valid injury in fact;

   B. which is traceable to the conduct of Defendant;

   C. and is likely to be redressed by a favorable judicial decision.  See,

        *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders*

*of WildLife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in

*Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all

three prongs above.

**The "Injury in Fact" Prong**

41.     Plaintiff's injury in fact, must be both "concrete" and "particularized" in

order to satisfy the requirements of Article III of the Constitution, as laid out in

*Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning

that it actually exists.  In the present case, Plaintiff was called on his cellular phone

at least five times by Defendant.  In fact, Plaintiff expressly informed Defendant to

cease and desist from all future telemarketing on the very first call.  Such calls are

a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the

fact that Plaintiff's phone number, at all times relevant to this litigation, was on the

National Do-Not-Call Registry ( hereinafter, "DNC Registry").  As well, Plaintiff

had no prior business relationship with Defendant prior to receiving the seriously

harassing and annoying calls by Senior Life Planning, LLC   All of Plaintiff's

injuries are concrete and de facto. For an injury to be "particularized" means that

the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc.*

*v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant case, it was

Plaintiff's phone that was called and it was Plaintiff who answered the calls.  It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendant and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.

**The "Traceable to the Conduct of Defendant" Prong**

42.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendant. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendant directly, or by Defendant's agent at the express direction and control of Defendant.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

43.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically

redress the financial damages suffered by Plaintiff. Furthermore, Plaintiff's

Prayers for Relief request injunctive relief to restrain Defendant from the alleged

abusive practices in the future. The award of monetary damages and the order for

injunctive relief redress the injuries of the past and prevent further injury in the

future. Because all standing requirements of Article III of the U.S. Constitution

have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff

has standing to sue Defendant on the stated claims.

44.    "...[C]ourts in the Ninth Circuit have held that "allegations of nuisance and

invasions of privacy in TCPA actions are concrete" injuries that establish standing.

See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS

170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court

held that a violation of the TCPA represents a concrete injury because "[t]he

history of sustaining claims against both unwelcome intrusion into a plaintiff's

seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have]

traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016

U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at

1549-50). The court declined to follow Romero, explaining that Romero

"improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A

plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged

harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

45.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at

1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id*.

46.     Here, Plaintiff alleges that Defendant Senior Life Planning, LLC contacted him using a "telephone dialing system."  This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant SENIOR LIFE PLANNING's product. Third, Plaintiff declares that he has never heard of Defendant SENIOR LIFE PLANNING, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendant or consented to receive calls from Defendant. Plaintiff also has had no prior business relationship with Defendant.  Plaintiff had no reason to be in contact with Defendant SENIOR LIFE PLANNING nor has he ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendant used ATDS in sending their prerecorded solicitation messages.  Plaintiff does not own video or drone business and therefore could not possibly purchase loan services from Defendant.

47.     In Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular

telephone number at issue." He also declared that he has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendant to send the prerecorded messages.

## VI. FACTUAL ALLEGATIONS

### A. Senior Life Planning, LLC

48.     One of SENIOR LIFE PLANNING, LLC's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

49.     SENIOR LIFE PLANNING, LLC uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

### B. Plaintiff

50.     Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

### C. Telephone number 619-719-9640

51.     A phone number beginning 619-719-9640 is registered to Mr. Ewing.

52.     619-719-9640 is on the National Do Not Call Registry.

53.     Mr. Ewing answers calls made to 619-719-9640.

54.     Mr. Ewing pays the phone bills for 619-719-9640.

## VII. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

55.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56.     The foregoing acts and omissions of Senior Life Planning, LLC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

57.     The defendant in this matter is vicariously liable for the acts and actions of the lead source under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  Discovery will reveal the name of the lead agent.  SENIOR LIFE PLANNING controlled the lead agent and had actual knowledge of the TCPA violations.

58.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

59.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

60.     Plaintiff also seeks a permanent injunction prohibiting SENIOR LIFE

PLANNING, LLC and its affiliates and agents from making non-emergency

telemarketing robocalls to cellular telephone numbers without prior express written

consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Telephones, 47 U.S.C. § 227(b)(1)(B))

61.     Mr. Ewing realleges and incorporates by reference each and every allegation

set forth in the preceding paragraphs.

62.     The foregoing acts and omissions of SENIOR LIFE PLANNING, LLC

and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C.

§ 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the

personal telephone 619-719-9640 number of Mr. Ewing without prior express

written consent.

63.     Mr. Ewing is entitled to an award of at least $500 in damages for each such

violation. 47 U.S.C. § 227(b)(3)(B).

64.     Mr. Ewing is entitled to an award of up to $1,500 in damages for each such

knowing or willful violation. 47 U.S.C. § 227(b)(3).

65.     Mr. Ewing also seeks a permanent injunction prohibiting SENIOR LIFE

PLANNING, LLC, and its affiliates and agents from making non-emergency

prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

66.    Plaintiff realleges and incorporate by reference each and every allegation set forth in the preceding paragraphs.

67.    The foregoing acts and omissions of SENIOR LIFE PLANNING, LLC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

68.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

69.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

70.    Plaintiff also seeks a permanent injunction prohibiting SENIOR LIFE PLANNING, LLC and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. EXHIBITS

71.     Exhibit A is a true and accurate copy of an email to Plaintiff from Defendant's employee.

72.     Exhibit B is a true and accurate copy of Senior Life Planning, LLC, a limited liability company details on it fictitious business name.

73.     Exhibit C is a true and accurate copy of the Defendant loan application.

74.     Exhibit D is a true and accurate copy of LexisNexis excerpt from the Gomez and Crunch case.

75.     Exhibit E is a true and accurate copy of Civil Case No. 2:18-cv-02071, James Everett Shelton v. Fast Advance Funding, LLC.

76.     Exhibit F is a true and accurate copy of Plaintiff AT&T telephone log.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for this Honorable Court to enter judgment against all Defendant as follows:

    A. Leave to amend this Complaint to conform to the evidence presented at trial;

    B. A declaration that actions complained of herein by SENIOR LIFE PLANNING, LLC violate the TCPA;

    C. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

D. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

E. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

F. For an injunction prohibiting all Defendant from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

G. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

H. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

I.  $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

J.  $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

K. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

L. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

M. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

N. For any other relief that the Court deems just and proper.

# XII. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  May 29, 2019

Anton Ewing,
Plaintiff